**UNITED STATES COURT OF APPEALS**
**Filed 10/16/96**
**TENTH CIRCUIT**

In re:

Frederick J. Spitz and Halcyon Janell
Spitz, doing business as Spitz Oil & Gas,
Fred Spitz & Sons, A/E Computer
Graphics Services, F. J. Rental, and
Halcyon Properties,

      Debtors,

----------------------------------

Asset Restructuring Fund, L.P.,

      Appellant,

v.

Frederick J. Spitz and Halcyon Janell
Spitz, doing business as Spitz Oil & Gas,
Fred Spitz & Sons, A/E Computer
Graphics Services, F. J. Rental and
Halcyon Properties,

      Appellees.

No. 95-6330
(D.C. No. CIV-94-1644-T)
(Western District of Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Circuit Judge, **MURPHY**, Circuit Judge, and **MCWILLIAMS**, Senior
Circuit Judge.

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

This case was originally set for oral argument before this panel on May 16, 1996. Shortly prior thereto, the appellees filed a motion to waive oral argument and submit the case on the briefs. In response thereto, the appellant advised this Court that it agreed to a submission on the briefs. Thereafter, this panel, after examining the briefs and the appellate record, determined that oral argument would not materially assist the decisional process. Accordingly, the motion was granted and the case was ordered to be submitted on the briefs and without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.2.

On October 4, 1989, Frederick J. Spitz and Halcyon Janell Spitz, husband and wife, (collectively "Spitz" or "Debtors"), filed a voluntary Chapter 11 petition. One of the Spitz' creditors was the First National Bank & Trust Company of Oklahoma City ("Bank"), with which Spitz, commencing in 1985, had a line of credit. In 1986, the Bank was declared insolvent and the Federal Deposit Insurance Corporation ("FDIC") was appointed receiver of the Bank. Asset Restructuring Fund, L.P. ("ARF") is the successor to FDIC. The principal amount initially owed FDIC (ARF) by Spitz was $2,083,400.00.[1]

On August 22, 1990, Spitz filed with the bankruptcy court a Debtors' Second Amended Plan of Reorganization ("Plan") and on that same date the bankruptcy court

---

[1]Counsel states in his brief that the only reason Spitz filed Chapter 11 proceedings was that FDIC insisted on immediate payment of Spitz' total indebtedness to the insolvent bank and FDIC's unwillingness to accept deferred payments under an orderly liquidation plan extending over a definite period of time.

confirmed the Plan. The Plan consisted of four so-called "Phases" and in connection therewith provided as follows:

> In the event the first three phases of the Plan, including the appointment of the liquidating agent at the end of two (2) years, if necessary, have not resulted in payment in full to the FDIC of its entire debt with interest on or before March 1, 1994, then Phase IV shall consist of immediate appointment of a Chapter 11 trustee, upon motion of any interested party, to take any and all such action as is necessary to conclude the liquidation of any and all assets of the Estate. Because of the amount by which the value of all Estate assets exceeds the total debt, Debtors believe it is highly unlikely that Phase IV will be necessary.

The Plan also provided in Article XI thereof that "[u]ntil consummation of this Plan and entry of a Final Order closing this case, the Court shall retain jurisdiction pursuant to and for the purposes set forth in § 1127(b) of the Code and to insure that the purposes and intents of the Plan are carried out."

On April 1, 1994, ARF filed a motion to appoint a trustee, alleging, *inter alia*, that it had not been paid in full by March 1, 1994, and asked for appointment of a trustee "to complete the liquidation of the entire estate of the Debtor", as provided for in the Plan. In connection therewith, ARF also alleged in its motion to appoint a trustee that "[u]pon information and belief there are assets available for liquidation or other realization upon by a Trustee."

On July 13, 1994, the bankruptcy court denied ARF's motion to appoint a trustee. On that same day, the bankruptcy court also authorized the compromise and settlement of

the final account for the taxes owed the State of Oklahoma by Spitz[2] and at the same time entered a formal decree discharging the Debtors and closing the case. ARF appealed all three orders of the bankruptcy court to the United States District Court for the Western District of Oklahoma. On August 7, 1995, the district court affirmed all three orders of the bankruptcy court. ARF appeals. We reverse.

The Plan, in rather clear and understandable language, provides that, if FDIC was not paid in full on or before March 1, 1994, upon motion of an interested party, a trustee should be immediately appointed. It is agreed that ARF, FDIC's successor in interest, was not paid in full by March 1, 1994, and, as indicated, ARF filed a motion to appoint a trustee on April 1, 1994. Further, the Plan provided that until consummation of the Plan and entry of a final order closing the case, the bankruptcy court retained jurisdiction for the purpose of making sure that the "purposes and intents of the Plan are carried out."

In denying the motion for an appointment of a trustee, the bankruptcy court noted that the Debtors and the Internal Revenue Service filed objections to such appointment, and denied the motion without further comment.[3] In affirming the bankruptcy court's

_____

[2]On May 26, 1994, Spitz, the debtors, filed in the bankruptcy court a motion for authority to compromise and settle a controversy between Spitz and the Oklahoma Tax Commission concerning unpaid taxes owed the State of Oklahoma by Spitz, which taxes, including interest and penalty fees, was approximately $240,038.80. The proposed settlement, which, as indicated, was authorized by the bankruptcy court, was that Spitz would pay the unpaid taxes in full and the State of Oklahoma would waive all interest and penalties.

[3]Spitz filed an objection to ARF's motion to appoint a trustee and conceded that ARF was a creditor and a party in interest but claimed that since "there are no assets

- 4 -

denial of ARF's motion for appointment of a trustee, the district court noted that "the sole purpose of such appointment was to 'conclude the liquidation of any and all assets of the Estate' for the purpose of paying the FDIC claim." The district court further stated that "ARF would have received no benefit greater than that which it ultimately received if a trustee had been appointed" and concluded that the "appointment of a trustee pursuant to Phase IV of the Plan would serve no purpose where there were no assets to administer."

From the record before us, what a trustee, if appointed, could or could not accomplish, is rather speculative. What is not speculative or in any wise conjectural is this: the Plan clearly and unequivocally states that if FDIC was not paid in full by March 1, 1994, a trustee would be appointed immediately on motion of an interested party.[4] That command is to us quite clear, and, such being the case, the parties should be held to the Plan. 11 U.S.C. §§ 1141, 1142. The district court erred in affirming the bankruptcy court's denial of the motion to appoint a trustee. It follows that the district court's affirmance of the bankruptcy court's final decree discharging the Debtors and "closing" the case should also be reversed. Finally, since a trustee is now to be appointed, the district court's affirmance of the bankruptcy court's order authorizing a compromise

available for litigation which would benefit ARF" the request for an appointment of a trustee was "moot." We do not find in the record before us objections, as such, filed by the IRS, which incidentally is not a party to the present proceeding.

[4]In 1993, ARF filed a motion for the immediate appointment of a trustee, alleging, *inter alia,* that Spitz would be unable to make payment in full to ARF by March 1, 1994, and seeking the immediate appointment of a trustee based on an anticipatory breach of the Plan. That request was denied.

and settlement of the Spitz' tax liability to the State of Oklahoma was, in a sense, premature. The denial of ARF's motion to appoint a trustee by the bankruptcy court and the approval of the compromise agreement between Spitz and the Oklahoma Tax Commission by the bankruptcy court are to us related matters. The result of the trustee's activities could conceivably have an impact on the bankruptcy court's resolution of Spitz' request to approve its compromise with the Oklahoma Tax Commission or, indeed, have an effect on the desire of either Spitz or the Oklahoma Tax Commission to compromise.[5]

The order of the district court is reversed in its entirety, and the case is remanded to the district court with direction that it vacate the bankruptcy court's three orders and that it direct the bankruptcy court to appoint a trustee as mandated by the Plan.


ENTERED FOR THE COURT

Robert H. McWilliams
Senior Circuit Judge

---

[5]The Oklahoma Tax Commission is not a party to the present proceeding.